**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| LAW OFFICES OF PHILLIPS & BORDALLO, P.C., | CIVIL CASE NO. 20-00018 |
| Petitioner, | **ORDER ON MOTION FOR SUMMARY JUDGMENT** |
| vs | |
| EDWARD M. BIRN, in his personal capacity as the Director of the Department of Administration of the Government of Guam, THE GOVERNMENT OF GUAM, and DOES 1-10, | |
| Respondents. | |

This matter is before the court on Petitioner Michael Phillips's Motion for Summary Judgment (ECF No. 24) and Respondents' Motion to Strike (ECF No. 38). The court heard oral argument on May 12, 2021. ECF No. 40. After the hearing, the court ordered supplemental briefing on the issue of whether Phillips's lawsuit seeks prospective or retroactive relief. ECF Nos. 41, 42. For the reasons that follow, the court hereby **DISMISSES** Phillips's Amended Complaint as it impermissibly seeks retroactive damages and **DENIES AS MOOT** Phillips's Motion for Summary Judgment and Respondents' Motion to Strike.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Guam government retirees (the Class) brought a class action in the Superior

---

[1] Respondents filed a Motion to Strike large portions of Petitioner's reply brief as inadmissible statements related to settlement negotiations. As the court is dismissing the lawsuit on different grounds, the court offers no opinion on Respondents' motion.

Court of Guam against the Government of Guam for failing to pay cost-of-living allowances

(COLA) to the Class. Styled as *Rios v. Camacho*, SP 206-93, the lawsuit languished for well

over a decade before the Superior Court of Guam entered judgment pursuant to a stipulated

agreement between the parties. Pursuant to the judgment, the Government of Guam was to pay a

total of $123,580,231.00 to the COLA Class, ten percent of which was to be set aside for

Michael Phillips, who had served as class counsel.

Unfortunately, the Government of Guam lacked the means to immediately pay the $124-

million-dollar judgment. Nonetheless, recognizing the need to quickly facilitate payment to the

Class members, many of whom were elderly, the Guam Legislature enacted 5 G.C.A. § 6404(d)

in September 2007. Section 6404(d) permitted the Government of Guam to raise funds to pay the

Class by selling interest-bearing "General Obligation Promissory Notes" to third-party investors.

Furthermore, the Government of Guam was to issue a serial "Certificate of Claim" to each

member of the Class within thirty days, which stated the dollar amount owed to the individual

Class member, imposed an interest rate of seven percent, and allowed a Class member to sell or

assign the Certificate to a third party. To receive the dollar amount and the accrued interest, a

Certificate holder was to present the Certificate for "redemption" at a later, unspecified date.

Section 6404(d) also contained a provision about Phillips's attorneys' fees. Section

6404(d)(2) states the "Plaintiffs' Attorneys in the *Rios* case may request and receive a Certificate

for not more than fifty percent (50%) of the amount owed to them pursuant to the Judgment."

However, shortly before § 6404(d) was enacted and for two years thereafter, the

Government of Guam made several incremental cash payments to Phillips, which by July of

2009 totaled $12,154,380.49.[2] At that point, the Government of Guam stopped making

---

[2] The Government of Guam likely began to directly pay Phillips in response to Phillips's attempts to force it to issue him a promissory note under 5 G.C.A. § 22415. Under § 22415, an unpaid creditor of the Government of Guam is permitted to request a promissory note for the full amount of the amount owed to them, plus interest.

incremental payments to Phillips, leaving $203,642.61 yet to be paid under the *Rios* judgment.

Phillips remained undeterred in his efforts to collect. Arguing he was entitled to a promissory note under 5 G.C.A. § 22415 and a Certificate of Claim pursuant to § 6404(d), Phillips filed another lawsuit in the Superior Court of Guam, styled as *Phillips v. Perez*, SP 0010-10. In response to the lawsuit, the Government of Guam issued Phillips a § 6404(d) Certificate of Claim in the amount of $1,070,370.29 on April 29, 2010.[3] After receiving the Certificate, Phillips voluntarily dismissed the portion of his lawsuit that sought the Certificate.

By this time, Phillips had received $12,154,380.49 in direct payments from the Government of Guam and had received a Certificate of Claim in his name for $1,070,370.29. Nevertheless, Phillips continued with the portion of his lawsuit seeking a promissory note and filed a motion seeking a writ of mandamus to force the Government of Guam to issue him a promissory note under 5 G.C.A. § 22415.

On October 7, 2010, the Superior Court of Guam denied his motion. The Superior Court found the Certificate of Claim was an amount equal to or greater than the total award of fees due to Phillips, and thus the Certificate of Claim was an adequate remedy for Phillips such that a writ of mandamus was inappropriate. Furthermore, forcing the Government of Guam to issue a promissory note for the same attorneys' fees for which the Certificate of Claim covered would give Phillips a double recovery.

Phillips remained undiscouraged and persisted in his attempt to receive more money. Over a year after the Superior Court of Guam denied his motion seeking a writ of mandamus, he sent an email to the Attorney General of Guam stating he intended to file a motion asking the court to reconsider its decision. Instead of undergoing further litigation, however, Phillips

---

[3] It is unclear on the current record why the Certificate of Claim was issued for an amount several times larger than the remaining $203,642.61 owed to Phillips per the *Rios* judgment. The court speculates it was because of the interest provisions of § 6404(d).

1 offered to settle his claim for a lump sum payment.

2 The Government of Guam accepted the offer, and the parties executed a "Settlement

3 Agreement" on May 10, 2012. In the Agreement, Phillips promised he would "not pursue any

4 further or future legal action or claims against the Government of Guam, the Department of

5 Administration, its director, or any other Government of Guam agency or official resulting from

6 the incidents that are the basis of [his] petition." In return, Phillips received a lump sum payment

7 of $633,709.32. The Agreement designated $535,185.15 of the settlement as principal, and the

8 other $98,524.17 as interest.

9 Thus, Phillips had received a grand total of $12,788,089.81 (surpassing the *Rios*

10 judgment by $430,066.71). But six years[4] after the parties entered into the Settlement

11 Agreement, Phillips presented his Certificate of Claim to the Head of the Department of

12 Administration, Edward Birn, seeking to redeem the Certificate in the full amount of

13 $1,070,370.29. Birn rejected the request and informed Phillips the liability represented by the

14 Certificate had been eliminated by the Settlement Agreement.

15 After Birn rejected the Certificate of Claim, Phillips (hereinafter "Petitioner") filed

16 another lawsuit, this time in federal court, against Birn and the Government of Guam

17 ("Respondents") alleging two causes of action: (1) declaratory relief and specific performance of

18 the Certificate of Claim, and (2) a § 1983 claim alleging a violation of his constitutional rights

19 when Birn refused to pay on the Certificate.[5] Petitioner has now filed a motion for summary

20 judgment, asking the court to uphold the "validity" of his Certificate of Claim and to issue

21 mandamus relief to compel Respondents to "recognize, honor, and process" his "Certificate of

22

23 [4] The funds raised under § 6404(d) had been insufficient to pay the *Rios* judgment, so the Guam Legislature enacted
more legislation to prioritize payments to certain class members. Phillips stated during oral argument that his
Certificate was not considered high priority, and thus he had to wait before redeeming his Certificate.

24 [5] It appears that Petitioner's first cause of action is the relief he seeks under the § 1983 claim, rather than an
independent cause of action.

Claim including principal and interest." ECF No. 4 at 19.

## II. ANALYSIS

Respondents first argue this court does not have subject matter jurisdiction to hear a 42 U.S.C. § 1983 claim per the Supreme Court's holding in *Ngiraingas v. Sanchez*, 495 U.S. 182 (1990). The court disagrees with Respondents, at least as it relates to the question of this court's subject matter jurisdiction over this case.[6] However, the court agrees that *Ngiraingas*, along with its progeny, indicate Petitioner has failed to state a cognizable § 1983 claim, which is fatal to this lawsuit.

### 1) Legal Background

Section 1983 allows an individual to sue a "person" in their personal capacities if the "person" violates an individual's constitutional rights while under color of law. 42 U.S.C. § 1983. In *Ngiraingas*, individuals brought a lawsuit seeking money damages from various Guam officials for the alleged violations of constitutional rights arising from an arrest. *Ngiraingas*, 495 U.S. at 182. The Supreme Court examined the background and legislative history of § 1983 and found Guam and officials acting within their official capacity on behalf of Guam did not qualify as a "person" for purposes of the statute. *Id.* at 192. Consequently, Guam could not be liable under § 1983, and the case had been properly dismissed by the District Court. *Id.*

However, the Ninth Circuit later provided a caveat to that holding. In *Guam Soc. of Obstetricians and Gynecologists v. Ada*, 962 F.2d 1366, 1368 (9th Cir. 1992), as amended (June 8, 1992), several plaintiffs brought another § 1983 claim against Guam. Instead of seeking money damages as the plaintiffs had in *Ngiraingas*, the plaintiffs here sought to enjoin Guam from enforcing an abortion ban. Guam responded by arguing it was not a "person" for purposes of a § 1983 claim as set forth in *Ngiraingas*.

---

[6] Petitioner also asserts subject matter jurisdiction under the federal mandamus statute. 28 U.S.C. § 1361. As the court finds it has subject matter jurisdiction under § 1983, the court expresses no opinion on this argument.

The Ninth Circuit disagreed. Instead of money damages, the plaintiffs here sought only to enjoin Guam from enforcing an unconstitutional law, a form of injunctive relief allowed against states under the principles set forth in the seminal case *Ex parte Young*, 209 U.S. 123 (1908).[7] Finding there was "no reason why the same distinction between injunctive and damages actions against officials should not apply to a territory" the Ninth Circuit held the lawsuit presented a cognizable § 1983 claim. *Ada*, 962 F.2d at 1371.

The Ninth Circuit provided more guidance on the subject in *Paeste v. Government of Guam*, 798 F.3d 1228 (9th Cir. 2015). Guam taxpayers brought a § 1983 case against Guam alleging violations of equal protection in the way Guam issued tax refunds. After the trial court granted summary judgment in favor of the taxpayers, Guam argued for the first time on appeal it was not a "person" within the meaning of § 1983. When the Guam taxpayers pointed out Guam had waived the argument by failing to raise it before the trial court, Guam pivoted and argued the issue of who was a "person" under § 1983 was a question of subject matter jurisdiction, and thus could be raised for the first time on appeal.

The Ninth Circuit rejected Guam's argument that the definition of "person" in a § 1983 claim implicated subject matter jurisdiction. *Id.* at 1233-234. Instead, "whether [a party] is a 'person' under § 1983 is not a jurisdictional question but rather a statutory one" and thus instead went towards whether plaintiffs had presented a valid cause of action. *Id.* at 1234 (internal quotations omitted).

Even though it was not a jurisdictional issue, the Ninth Circuit nonetheless exercised its

---

[7] In *Young*, the Supreme Court held a state's immunity provided by the Eleventh Amendment does not bar a lawsuit only seeking prospective relief against an official-capacity defendant, reasoning a state official who is enforcing an unconstitutional law is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* at 134. Thus "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *VOPA v. Stewart*, 563 U.S. 247, 260 (2011).

discretion to consider the merits of Guam's § 1983 argument. The panel reaffirmed *Ada*'s holding that a Guam official is a "person" for purposes of a § 1983 claim when the official is sued in his official capacity for prospective relief per *Ex parte Young*, as such a claim would not run directly against the state's treasury and thus not an action against the state. *Id.* at 1235.

Here, Respondents have presented the same jurisdictional arguments the Ninth Circuit rejected in *Paeste*, and thus their arguments more accurately go towards the issue of whether Petitioner's lawsuit meets the statutory elements of a § 1983 claim. This argument evidences the often-conflated distinction between who qualifies as a "person" under § 1983, which is not jurisdictional in nature, and Eleventh Amendment immunity which, in the past, has been interpreted as jurisdictional in nature. *See generally Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) ("Similar to and often conflated with Eleventh Amendment immunity is the issue of whether [a defendant] is a "person" for the purposes of 42 U.S.C. § 1983, such that a claim under that section is cognizable."); *compare Edelman v. Jordan*, 415 U.S. 651, 678 (1974) *with Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 761 (9th Cir.), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999). Nevertheless, the panel in *Paeste* explicitly rejected Guam's contention that the *Ex parte Young* doctrine only applies to suits against state officers, and instead held the *Ex parte Young* doctrine applies to Guam within the context of determining whether Guam is a "person" for purposes of a § 1983 claim. *Paeste*, 798 F.3d at 1236 (9th Cir. 2015) ("Guam's suggestion that *Ada* was wrong because the *Ex Parte Young* principle applies only to suits against state officers is baseless.").

In sum, the court's review of the law indicates that whether Respondents qualify as "persons" for purposes of a § 1983 claim is not jurisdictional in nature. Thus, the court has jurisdiction.

**2) Failure to State a § 1983 Claim**

Despite having jurisdiction, the court does find Respondents' arguments have raised valid concerns about whether Petitioner has filed a cognizable § 1983 claim. What *Ngiraingas*, *Ada*, and *Paeste* establish together is that the Government of Guam and its officials may be sued for prospective injunctive relief, as they are "persons" for purposes of a § 1983 claim under the *Ex parte Young* doctrine. But if they are instead being sued for retroactive damages, the Government of Guam and Guam's officials do not meet the § 1983 statutory definition of a "person." Thus, the determinative issue is what type of relief Petitioner seeks.

"As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night. *Edelman,* 415 U.S. at 667 (1974). However, there are some guiding principles that indicate Petitioner's relief is not prospective. If the relief sought is "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials" it is "in practicable effect indistinguishable in many aspects from an award of damages against the State" and thus does not fall under the *Ex parte Young* doctrine. *Id.* at 668; *see also Taylor v. Westly*, 402 F.3d 924, 935 (9th Cir. 2005). Another telltale indicator is whether the suit "simply demand[s] money that should have been paid at one time in the past" as opposed to an "order that a state actor conform his conduct to constitutional requirements in an ongoing, continuous fashion." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 509-510 (6th Cir. 2008); *see also Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 646 (2002). Prospective relief is the type of relief that would address an "ongoing violation of federal law" as opposed to remedying a single past occurrence. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997); *see also Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002) ("suits demanding retroactive relief, such as requests for money that should have been

paid, do not fall under the *Ex Parte Young* exception").

The court raised these concerns at oral argument and ordered supplemental briefing on the matter. At both oral argument and in his supplemental briefing, Petitioner contended he only seeks a "limited ruling" that the Certificate of Claim is valid, which falls short of seeking damages and thus within the scope of a permissible § 1983 claim. Petitioner also pointed out that a court order stating the Certificate is "valid" would not actually order Respondents to pay anything to Petitioner, but would still provide him a remedy as it would be "sufficient to produce Petitioner's intended result of having Respondent Birn and other relevant officers of the Government of Guam perform accordingly and in good faith follow Public Law 29-18." ECF No. 42 at 3.

The court is unpersuaded by these arguments. For one, the prayer for relief in the Amended Complaint asks the court to compel Respondents to "issue a Writ in the Nature of Mandamus directed to Respondents compelling Respondents to recognize, honor, and process Petitioner's Certificate of claim including principal and interest" and in the alternative, issue a direct order that "Respondents pay Petitioner's Certificate of Claim including principal and interest." ECF No. 4.

But more importantly, the Supreme Court and the Ninth Circuit have rejected Petitioner's "limited ruling" argument in situations where the "issuance of a declaratory judgment [] would have much the same effect as a full-fledged award of damages or restitution by the federal court," *Green v. Mansour*, 474 U.S. 64, 73 (1985), or when the "sole efficacy [of declaratory relief] would be as res judicata in a subsequent state court action for retroactive damages or restitution." *Native Vill. of Venetie I.R.A. Council v. State of Alaska*, 944 F.2d 548, 552 (9th Cir. 1991). Here, Petitioner's requested remedy would practically function as a monetary judgment against the Government of Guam. By declaring the Certificate "valid," the

Court, in essence, finds that Birn was wrong to reject it, which is a finding that Birn should pay on it. Even more problematic, the Certificate of Claim lists the sum of money that Petitioner is allegedly entitled to receive; approving the Certificate would function as an order that Petitioner should receive that money.

Petitioner also argues that the remedy he seeks is prospective, as Birn continues to violate constitutional rights by continually refusing to make payment on his Certificate. However, this type of "distinction between a continuing obligation on the part of the [defendant] and an ongoing liability for past [violation] is essentially a formal distinction of the sort [] rejected in *Edelman*." *Papasan v. Allain*, 478 U.S. 265, 280 (1986). Consequently, Birn's one-time, past decision does not present an ongoing constitutional violation, taking the relief sought here outside the purview of prospective relief.

Although Respondents did not formally move to dismiss this case, at oral argument they conceded that their ill-framed jurisdictional challenge was better framed as a statutory challenge to the elements of § 1983. Regardless, "[a] trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim." *Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

No matter how Petitioner pitches it, a court order upholding the "validity" of his Certificate of Claim inevitably[8] leads to Petitioner attempting to use that court order to force Respondents to pay him a sum certain amount of money, which stems from a single, past decision to reject the Certificate. Thus, Petitioner is seeking relief tied to retroactive damages, and thus outside the scope of the type of relief contemplated by the *Ex part Young* doctrine, and

---

[8] A court "may exercise its discretion to deny leave to amend due to [] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir.2010) (internal quotations omitted). Here, the court finds that not matter how Petitioner frames the issue, the remedy being sought is financial in nature and relates to a past event, and thus falls outside of the *Ex parte Young* doctrine.

thus the court finds that the Amended Complaint does not allege a cognizable § 1983 claim for which relief may be granted.[9]

## III. CONCLUSION

The court recognizes that there are underlying disputes as to the nature and scope of the Settlement Agreement. Nevertheless, the "inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646. The mere "allegation of an ongoing violation of federal law [] is ordinarily sufficient" for the court to apply the *Ex parte Young* doctrine, *Coeur d'Alene Tribe*, 521 U.S. at 262, but as detailed above, Petitioner has not alleged an ongoing violation of his constitutional rights for which he seeks prospective relief. Consequently, the court need not address the merits of the underlying claims.[10]

The court **HEREBY ORDERS** the following:

- Petitioner's motion for summary judgment (ECF No. 24) is **DENIED AS MOOT**;
- Respondents' motion to strike (ECF No. 38) is **DENIED AS MOOT**; and
- Petitioner's Amended Complaint (ECF No. 4) **IS DISMISSED WITH PREJUDICE**.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
     **Chief Judge**
     **Dated: Jun 02, 2021**

---

[9] Generally, the court must give notice of its intention to dismiss a complaint and give the plaintiff "an opportunity to at least submit a written memorandum in opposition," *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (citations omitted); *Shoop v. Deutsche Bank Nat. Trust Co.*, 465 F.App'x 646, 647 (9th Cir. 2012). Here, the issue of what type of relief Petitioner seeks was discussed extensively at oral argument, and the court also informed the parties at the hearing it was considering whether the entire action should be dismissed on that basis. The court also gave Petitioner an opportunity to provide supplemental briefing on the issue.

[10] Even if the court were to consider the merits of the underlying claims, Petitioner has confused a financial instrument evidencing that a debt exists with the legal obligation to pay that debt. A creditor cannot force a debtor to issue payment under the terms of a financial instrument if the underlying debt obligation for which the instrument was issued has already been paid. Furthermore, the dollar amount represented on Petitioner's Certificate is not a distinct obligation from the *Rios* judgment – they each relate to Petitioner's work he did for the Class in the *Rios* litigation. To hold otherwise would allow Petitioner to potentially be paid twice for work he only did once.